In the Matter of: Martha Josephine RUCKER, Debtor.

Martha Josephine Rucker, Movant,

v.

Conseco Finance Servicing Corp. fka Green Tree Financial Servicing Corporation, Thomas S. Kenney, and Kenney and Solomon, P.C., Respondents.

No. 99–30752 RFH.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Sept. 13, 2001.

Barry Gordon Irwin, Athens, GA, for Movant.

John A. Medina and Thomas S. Kenney, Duluth, GA, for Respondents.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Martha Josephine Rucker, Movant, filed on December 29, 2000, a Motion for Sanctions Pursuant to 11 U.S.C. § 105(a). Conseco Finance Servicing Corp. fka Green Tree Financial Servicing Corporation, Thomas S. Kenney, and Kenney and Solomon, P.C.,[1] filed a response on January 17, 2001. The Court will refer to Conseco Finance as "Respondent." A hearing was held on July 11, 2001. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Movant purchased a mobile home in December of 1996. Respondent financed the purchase and perfected its security interest in Movant's mobile home.[2] Movant was to make monthly payments of $267.72.

The term of the loan was thirty years. Movant was required to maintain insurance on her mobile home.

Movant had financial problems and filed a petition under Chapter 13 of the Bankruptcy Code on June 22, 1999. The Court entered an order on January 11, 2000, confirming Movant's Chapter 13 plan. The confirmed Chapter 13 plan provides that Movant would act as her own disbursing agent on her obligation to Respondent.

Movant failed to make her payments to Respondent. Respondent filed on October 29, 1999, a motion for relief from the automatic stay. Movant and Respondent reached an agreement and submitted a consent order, which the Court entered on February 16, 2000. The consent order was prepared by Respondent's counsel.

The consent order provided, in part, as follows:

IT APPEARING that CONSECO filed a Motion for Relief from Stay alleging that the debtor failed to insure the home; and

IT APPEARING that the debtor has provided proof of insurance; however, an earned insurance premium is owed by the debtor to CONSECO in the amount of $128.70; and

IT APPEARING that the parties have agreed that CONSECO should be allowed to amend its prepetition arrearage claim by increasing said claim $128.70 and that said amended prepetition arrearage claim shall be paid in full by the Chapter 13 Trustee; and

IT APPEARING that the parties further agree the debtor shall resume regular monthly payments on December 20,

---

1. Thomas S. Kenney is counsel for Conseco Finance Servicing Corporation. Mr. Kenney is a partner in the law firm of Kenney and Solomon, P.C.

2. Respondent was known as Green Tree Financial Corporation when it financed the purchase of Movant's mobile home.

1999 and each month thereafter until the contract is paid in full.

SO ORDERED, this 16 day of Feb., 2000.

Movant again failed to make her payments to Respondent. Respondent filed another motion for relief on April 26, 2000. Movant and Respondent reached an agreement and submitted another consent order, which the Court entered on August 11, 2000. The consent order was prepared by Respondent's counsel.

The consent order provided, in part, as follows:

> IT APPEARING that CONSECO has filed a Motion to Modify Automatic Stay alleging that the post-petition payments on the Mobile Home Retail Installment Contract are in arrears; and
>
> IT APPEARING that the parties have agreed that as of the date of this hearing, the Debtor has brought her post-petition principal and interest payments current; and
>
> IT APPEARING that the parties have agreed that the Debtor shall resume making regular contract payments on July 20, 2000 and each subsequent payment thereafter pursuant to the Mobile Home Retail Installment Contract and this Consent Order; and
>
> IT APPEARING that the parties have agreed that the Debtor shall provide CONSECO with proof of current insurance on the subject mobile home on or before July 14, 2000; ...

The consent order contained a six-month strict compliance provision. This provision provided that, should Movant fail to cure, within fifteen days, a default under the consent order, Respondent could file a de-

fault motion supported by an affidavit setting forth the default. Respondent then would be entitled to relief from the automatic stay without further notice to Movant and without a hearing.

Respondent sent a letter dated September 27, 2000, advising Movant that she was in default for failing to make her payment for September of 2000 in the amount of $424.32.[3] The letter stated that Respondent would submit a request that the Court lift the automatic stay supported by an affidavit unless Movant cured the default within fifteen days.

Respondent sent Movant's counsel a letter dated October 6, 2000, explaining why Respondent contended that it was owed $424.32. The letter provided, in part:

> Pursuant to your request, the following is a breakdown of the arrearage pursuant to the Notice of Default dated September 27, 2000:

| Payment due date | Amount Due | Amount Paid by Debtor | Amount Outstanding |
|---|---|---|---|
| 8/20/99 | $310.62 | $267.62 | $ 43.00 |
| 9/20/99 | $310.62 | $267.82 | $ 42.80 |
| 10/20/99 | $310.62 | $267.72 | $ 42.90 |
| 12/20/99 | $267.72 | $138.70 | $129.02 |
| 2/20/00 | $310.62 | $267.72 | $ 42.90 |
| 3/20/00 | $310.62 | $267.72 | $ 42.90 |
| 4/20/00 | $310.62 | $267.72 | $ 42.90 |
| 5/20/00 | $310.62 | $272.72 | $ 37.90 |
| | | | $424.32 |

Movant made her "regular" September 2000 payment of $267.72[4] within the fifteen-day grace period. Movant did not pay the arrearage claimed by Respondent. Respondent filed on October 30, 2000, a Default Motion supported by an affidavit and a proposed order lifting the automatic stay. The affidavit was made by Roberta Hansen, Respondent's bankruptcy supervisor. Ms. Hansen, in her affidavit, states, in part:

---

3. Movant's monthly payments are due on the twentieth of each month.

4. This amount represents the monthly principal and interest on Movant's mobile home obligation.

**5.**

A consent order was entered setting forth a payment plan for the Debtor to cure the post-petition arrearage and resume monthly payments to CONSECO. The Consent Order was signed by all parties and was entered by the Court on August 11, 2000. A copy of the Consent Order is attached hereto as Exhibit "C".

**6.**

On September 27, 2000, counsel for CONSECO sent to the Debtor and to the Debtor's attorney, pursuant to the Consent Order, a Notice of Default and Right to Cure. A copy of the Notice of Default is attached hereto as Exhibit "D" and incorporated herein by reference. The Notice advised the Debtor that she had fifteen (15) days to cure the arrearage of $424.32.

**7.**

Since the posting of the Notice of Default, the Debtor has paid $267.72. The Debtor remains in default in the amount of $156.60.

Movant's counsel sent a letter to the Court, which was received on October 30, 2000. The Court treated the letter as a response to Respondent's Default Motion.

A hearing on Respondent's Default Motion was held on January 9, 2001. Respondent contended that Movant was in default because Movant had failed to include four months of insurance premiums when Movant made her September 2000 payment. Respondent's witness testified that Movant had failed to pay the insurance premiums of $42.90 for February, March, April, and May of 2000. Respondent argued that Movant was in default under the consent order because Movant had not paid these insurance premiums.

The Court, after hearing evidence on January 9, 2001, held that the consent order entered on August 11, 2000, had resolved the dispute between Movant and Respondent and that the consent order was silent regarding the insurance premiums for February, March, April, and May of 2000. The Court held that Respondent's affidavit was not sufficient to show a default and that Movant was not in default under the consent order.

The Court entered an order on January 12, 2001, denying Respondent's Default Motion. That order is now final and binding.

The Court held a hearing on Movant's motion for sanctions on July 11, 2001. Respondent argued that it believed that the consent order entered on August 11, 2000, allowed it to collect the insurance premiums. Respondent argued that its affidavit alleging a default by Movant was not false. Respondent argued that it attempted to resolve the default issue. The Court notes, however, that Respondent's offer to resolve the default required Movant to pay the disputed insurance premiums through her Chapter 13 plan.

Movant testified that she was required to be in court several times as a result of Respondent's Default Motion. Movant testified that she felt bad, but didn't lose any sleep over this matter. Movant testified that the stress she suffered was worth $2,000. Movant testified that she has made all payments to Respondent.[5]

Movant contends that Respondent knowingly filed a false affidavit in support of the Default Motion. Movant brings her action for sanctions under section 105(a) of the Bankruptcy Code[6] and Federal Rules of

---

**5.** Some of Movant's payments were made in the 15–day grace period.

**6.** 11 U.S.C.A. § 105(a) (West 1993).

Civil Procedure 9011.[7]

■ The Court notes that Movant's motion for sanctions was filed premature under Rule 9011(c)(1)(A).[8] *Collier on Bankruptcy* states:

**¶ 9011.06. Initiation of Sanctions.**

**[1]-Motion by Party.**

. . . .

**[b]-"Safe Harbor" Prerequisite to Filing Motion.**

The "safe harbor" provision contained in Rule 9011(c)(1)(A), granting a time period between the time of service and the time for filing, is designed to allow for the correction of the alleged violation. Accordingly, a motion for sanctions under Rule 9011 may not be "filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b)." . . .

This "safe-harbor" provision is a mandatory procedural prerequisite. Sanctions imposed without compliance are subject to reversal. The fact that a court has granted leave to move for sanctions may not be used to circumvent the "safe harbor" prerequisite.

10 *Collier on Bankruptcy* ¶ 9011.06[1][b] (15th ed. rev.2001). *See* 1 Moore's Manual: Federal Practice and Procedure § 9.22[3] (2001).

**7.** Fed. R. Bankr.P. 9011.

**8.** Fed. R. Bankr.P. 9011(c)(1)(A).

**9.** 11 U.S.C.A. § 105(a) (West 1993).

The record shows that Movant's counsel served the motion for sanctions on December 28, 2000. Movant's counsel filed the motion for sanctions with the Court on December 29, 2000. Thus, Movant's motion for sanctions did not comply with the "safe harbor" provision of Rule 9011(c)(1)(A) and sanctions may not be awarded under Rule 9011.

■ Movant also seeks an award of sanctions under section 105(a) of the Bankruptcy Code,[9] which provides as follows:

**§ 105. Power of court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a) (West 1993).

In *Norwest Bank Minnesota, N.A. v. Lindsey (In re Lindsey),*[10] this Court stated:

Section 105 grants the Court statutory contempt powers to award monetary damages and other relief as "necessary and appropriate" to carry out the provisions of the Bankruptcy Code. *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1389–90 (11th Cir.1996). "[T]he plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code."

**10.** Ch. 13 Case No. 98–54195 (Bankr.M.D.Ga. Sept.14, 2000).

*Jove Engineering, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1554 (11th Cir.1996) (emphasis original).

■ In *In re Volpert,* 110 F.3d 494 (7th 1997), the Seventh Circuit Court of Appeals stated:

> [U]nder 11 U.S.C. § 105(a), bankruptcy courts may punish an attorney who unreasonably and vexatiously multiplies the proceedings before them. *See Caldwell v. Unified Capital Corp. (In re Rainbow Magazine),* 77 F.3d 278, 283–84 (9th Cir.1996); *In re Courtesy Inns,* 40 F.3d 1084, 1089 (10th Cir.1994) .... The ability to prevent the type of behavior exhibited in this case is necessary if the bankruptcy courts are to carry out efficiently and effectively the duties assigned to them by Congress.

110 F.3d at 500.

" 'Vexatious' means 'without reasonable or probable cause or excuse.' " *United States v. Gilbert,* 198 F.3d 1293, 1298 (11th Cir.1999).

The Court also may sanction certain conduct through its inherent contempt powers, which arise independent of any statute or rule. *Jove,* 92 F.3d at 1553. The inherent powers of a court can be invoked even if procedural rules exist which sanction the same conduct. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991). The court has the inherent power to assess attorney's fees against a party or counsel that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers,* 501 U.S. at 45–46, 111 S.Ct. at 2133; *Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1574–76 (11th Cir.1995).

"[The Court's] contempt powers [under § 105(a) ] inherently include the ability to sanction a party." *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439, 445 (1st Cir.2000), *cert. denied,* 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001).

■ Respondent contends that its affidavit was not false because Movant failed to pay the insurance premiums for February, March, April, and May of 2000. Respondent, in its letter brief,[11] states, in part:

> As is set forth in our response, sanctions are not warranted in this case because the filing of the Affidavit does not violate the Federal Rule of Bankruptcy Procedure 9011(b). The Affidavit was not presented for any improper purpose. The Affidavit was not filed to harass or to cause unnecessary delay or needless increase in the cost of litigation. The Affidavit was filed because there had been a default under the terms and obligations set forth in the Mobile Home Retail Installment Contract in that monthly insurance payments remained unpaid. As the record reflects, insurance was an issue when the subject Consent Order was agreed to inasmuch as the Consent Order provides that the debtor was to provide Conseco with proof of current insurance on the subject mobile home on or before July 14, 2000. Furthermore, the debtor testified at the hearing that she did not provide this proof of insurance until after the July 11, hearing. Clearly, insurance was an issue. It is often the case that insurance premiums paid by the creditor cannot be reimbursed after the debtor provides proof of independent insurance, for a variety of reasons. For instance there may be a gap in coverage. As the Court is aware, in this case the premiums could not be reimbursed due to the debtor's delay in providing Conseco with the written notice of cancellation they re-

**11.** Respondent's letter brief was filed with the Court on July 23, 2001.

quire. Therefore, the Consent Order was drafted to recite that the debtor had brought her post petition principal and interest payments current, that the debtor shall provide Conseco with proof of her insurance on the subject mobile home on or before July 14, 2000 and to provide that the strict compliance mechanism of the Consent Order could be triggered if the debtor defaulted under any terms or obligations set forth in the Consent Order or the Mobile Home Retail Installment [Contract]. It was believed that this would be sufficient as the Contract requires the Debtor to maintain insurance or pay for insurance which the Creditor has to buy.

The Court disagreed that this language was sufficient to allow Conseco to take an Order Lifting Stay pursuant to an Affidavit of Default for the default. The Court's ruling in denying the Affidavit of Default makes it clear to the respondents in this Motion for Sanctions that the Court would prefer that the Consent Order be more explicit with regard to the expectation as to repayment of the unreimbursable insurance premiums. Certainly, the Court's denial of the movant's Affidavit of Default in this matter will cause the respondents in this Motion for Sanctions to be more clear on this issue in Consent Orders drafted which address this issue in the future. However, the respondents to the Motion for Sanctions believe that it was not unreasonable for them to believe that they had sufficiently drafted the Consent Order to allow them to address unreimbursed insurance premiums through the strict compliance provision.

(Emphasis omitted).

The Court is not persuaded that it was reasonable for Respondent to rely on the consent order entered on August 11, 2000, to collect the insurance premiums. The consent order was silent regarding the insurance premiums. The consent order was prepared by Respondent's counsel.

The Court notes that Respondent's counsel had prepared a prior consent order, which was entered on February 16, 2000, which specifically addressed unpaid insurance premiums. It is clear that Respondent's counsel knew how to prepare a consent order which dealt with insurance premiums. The Court can only conclude that the consent order entered on August 11, 2000, resolved all of the issues presented by Respondent's motion for relief. The Court is persuaded that Respondent, through its Default Motion and supporting affidavit, attempted to collect insurance premiums contrary to the provisions of the consent order.

The Court is persuaded that Respondent's filing of the Default Motion had no reasonable basis and should not be excused. The Court is persuaded that Respondent should be sanctioned for filing the Default Motion and supporting affidavit.

■ The Court notes that Movant was required to be in court several times as a result of Respondent's Default Motion. Movant has suffered stress because of Respondent's Default Motion.

The Court is persuaded Respondent should be sanctioned $514.80, which is three times the amount of the default asserted by Respondent.[12]

The Court directs Movant's attorney to file a verified statement of his attorney time within twenty days of this decision.

---

12. Respondent contended that Movant had failed to pay insurance premiums of $42.90 for February, March, April, and May of 2000. Those premiums totaled $171.60

The Court will then make an appropriate award of attorney's fees.

An order in accordance with this memorandum opinion will be entered this date.